Of Counsel:
CRONIN, FRIED, SEKIYA,
  KEKINA & FAIRBANKS

L. RICHARD FRIED, JR.        0764-0
JOHN D. THOMAS, JR.          1415-0
GEOFFREY K. S. KOMEYA        6056-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-1433
Facsimile:  (808) 536-2073
E-mail:     rfried@croninfried.com
            jthomas@croninfried.com
            gkomeya@croninfried.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RACHEL K.M. MARRERO, Individually and as Personal Representative of the Estate of ANTONIO SIAKI MARRERO, Deceased, and as the Court-Appointed *Next Friend* for the Minor Children Z.T.S.M., A.A.J.M., and A.J.F.; ANTONIO V. MARRERO; and TAUAMATU MARRERO,<br><br>               Plaintiffs,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>               Defendant. | CIVIL NO. _____<br>(FTCA - Medical Malpractice)<br><br>COMPLAINT; SUMMONS |

## COMPLAINT

Plaintiffs above named, by and through their attorneys, Cronin, Fried, Sekiya, Kekina & Fairbanks, for claims for relief against Defendant above named, allege and aver as follows:

## COUNT I

1.     At all times relevant herein, plaintiff Rachel K.M. Marrero, Individually and as Personal Representative of the Estate of Antonio Siaki Marrero, deceased (hereinafter "Antonio"), was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

2.     At all times relevant herein, plaintiff Z.T.S.M., a minor, was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

3.     At all times relevant herein, plaintiff A.A.J.M., a minor, was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

4.     At all times relevant herein, plaintiff A.J.F., a minor, was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

5.      At all times relevant herein, plaintiff Antonio V. Marrero was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

6.      At all times relevant herein, plaintiff Tauamatu Marrero was domiciled in, and a citizen of, the City and County of Honolulu, State of Hawaii.

7.      Rachel K.M. Marrero is the surviving spouse of Antonio.

8.      Rachel K.M. Marrero is the duly appointed Personal Representative of the Estate of Antonio Siaki Marrero, deceased (hereinafter the "Estate").

9.      Rachel K.M. Marrero is the natural and legal mother of minor children Z.T.S.M., A.A.J.M., and A.J.F.

10.     Rachel K. M. Marrero is the duly appointed Next Friend for Z.T.S.M., A.A.J.M., and A.J.F.

11.     Rachel K.M. Marrero brings this action individually, on behalf of the Estate, as the Estate's duly appointed Personal Representative, and as the duly appointed Next Friend for Z.T.S.M., A.A.J.M., and A.J.F.

12.     Z.T.S.M. is the surviving natural and legal minor child of Antonio and Rachel.

13.   A.A.J.M. is the surviving natural and legal minor child of Antonio and Rachel.

14.   A.J.F. is the natural and legal minor child of Rachel.

15.   A.J.F. was wholly or partly dependent upon Antonio.

16.   Antonio V. Marrero is the surviving natural and legal father of Antonio.

17.   Tauamatu Marrero is the surviving natural and legal mother of Antonio.

18.   This is a medical malpractice and personal injury action to recover damages which arises from negligent acts and/or omissions of employees of the Government of the United States of America, while acting within the scope of their office and/or employment, under circumstances where the Government of the United States of America, if a private party, would be liable to plaintiffs.

19.   Jurisdiction is conferred on this Court by Title 28, United States Code § 1346.

20.   Pursuant to Title 28, United States Code, §§ 2671, et seq., administrative claims on behalf of plaintiffs were filed on or about March 25, 2014 with the Department of Health and Human Services.

21.    The administrative claims were received by the Department of Health and Human Services on or about March 31, 2014.

22.    More than six months have elapsed without final disposition of the administrative claims.

23.    At all times relevant herein, Defendant United States of America (hereinafter "Defendant") operated a medical care facility in the City and County of Honolulu, State of Hawaii, known as the Waianae Coast Comprehensive Health Center (hereinafter "WCCHC"), through the Department of Health and Human Services.

24.    On January 29, 2013 Antonio, a 32-year-old man, was evaluated at WCCHC with a history of sore throat and fever for a week.

25.    Upon examination at WCCHC, Antonio's tonsils were noted to be enlarged.

26.    Robert Bonham, M.D. ("Dr. Bonham") sedated Antonio to examine Antonio's throat for peritonsillar abscess.

27.    Before Antonio was sedated, Dr. Bonahm had visually examined Antonio's throat, tonsils, and uvula.

28.    Before Antonio was sedated, Dr. Bonham had decided to refer Antonio to an ENT specialist.

29.    Before Antonio was sedated, Dr. Bonham had no intent to treat Antonio's peritonsillar abscess himself.

30.    Before Antonio was sedated, Dr. Bonham knew or should have known that it was not medically necessary for Dr. Bonham to attempt to further examine Antonio's throat under sedation or treat Antonio's peritonsillar abcess himself.

31.    Before Antonio was sedated, Dr. Bonham knew or should have known that an ENT specialist would conduct a physical examination of Antonio.

32.    Before Antonio was sedated, Dr. Bonham knew or should have known that Antonio weighed approximately 298 lbs.

33.    Before Antonio was sedated, Dr. Bonham knew or should have known that Antonio's size and weight were risk factors making it difficult to protect Antonio's airway when he was sedated.

34.    Before Antonio was sedated, Antonio was alert and conversant.

35.    Before Antonio was sedated, Antonio was hemodynamically stable.

36.    Before Antonio was sedated, Antonio showed no evidence of acute distress.

37.    Before Antonio was sedated, Antonio's neck x-ray revealed no life threatening conditions.

38.    Before Antonio was sedated, Dr. Bonham knew or should have known that it was not medically necessary for Dr. Bonham to identify the size of the abscess prior to sending Antonio to an ENT specialist.

39.    Before Antonio was sedated, Dr. Bonham knew or should have known that it was not medically necessary for Dr. Bonham to examine Antonio under sedation.

40.    Before Antionio was sedated, Dr. Bonham knew or should have known that the swelling of Antonio's throat caused by the peritonsillar abscess was a risk factor making it difficult to protect Antonio's airway if he was sedated.

41.    Before Antonio was sedated, Dr. Bonham knew or should have known that the potential risks of sedating Antonio outweighed the possible benefits.

42.    Before Antonio was sedated, Dr. Bonham knew or should have known that no anesthesiologist or anesthetist was available to assist with protecting Antonio's airway if he was sedated nor to assist with responding to airway complications once sedation started.

43.    Dr. Bonham administered etomidate to sedate Antonio.

44.    15mg of etomidate was administered to Antonio at approximately 2210.

45.    Another 15mg of etomidate was administered to Antonio at approximately 2213.

46.    Dr. Bonham knew or should have known that two 15mg doses of etomidate in three minutes were excessive to place Antonio under light sedation.

47.    Dr. Bonham knew or should have known that two 15mg doses of etomidate in three minutes would place Antonio under moderate to deep sedation.

48.    Dr. Bonham knew or should have known that etomidate would cause relaxation of the tongue and soft tissues.

49.    Dr. Bonham knew or should have known that relaxation of the tongue and soft tissues could obstruct Antonio's airway.

50.    Dr. Bonham knew or should have known that patients under anesthesia lose their ability to control their airway.

51.    Dr. Bonham knew or should have known to perform a formal airway assessment of Antonio before sedation was attempted.

52.     Dr. Bonham knew or should have known that Antonio was at increased risk for airway obstruction because of his tonsillar swelling.

53.     Dr. Bonham knew or should have known that Antonio was at increased risk for airway obstruction because of his obesity.

54.     When Antonio was sedated, Antonio's airway was not protected by endotracheal or nasotracheal intubation.

55.     When Antonio was sedated, no licensed anesthesia provider was present.

56.     When Antonio was sedated, no in-house anesthesia or surgical support services were immediately available.

57.     While under sedation, Antonio's airway became obstructed.

58.     While under sedation, at 2215, Antonio developed respiratory compromise with reduced oxygenation.

59.     While under sedation, Antonio suffered pulmonary edema.

60.     At 2215, while under sedation, Antonio's oxygen saturation levels fell to 65%.

61.     At 2215, while under sedation, Antonio's pulse rate fell to 47.

62.     At 2215, a nasal trumpet was applied to Antonio.

63.     Insertion of the nasal trumpet returned frothy fluid.

64.     At 2216 a BVM (bag, valve, mask) was applied to Antonio.

65.     Dr. Bonham knew or should have known that a BVM would be ineffective.

66.     At 2225 an attempt was made to intubate Antonio.

67.     The intubation attempt was unsuccessful.

68.     At 2231 no pulse was detected, and CPR was started on Antonio.

69.     At 2233 an attempt was made to intubate Antonio with a bougie.

70.     This intubation attempt was unsuccessful.

71.     At 2243 a second attempt was made to intubate Antonio with a bougie.

72.     At 2255 a cricoidthyroidotomy was performed on Antonio.

73.     At 2330 Antonio was pronounced dead.

74.     Defendant, by and through its agents, servants and employees, negligently examined, evaluated, tested, diagnosed, sedated, resuscitated, cared for and otherwise treated Antonio.

75.     As a direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Antonio died on January 29, 2013.

76.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Antonio suffered great physical pain, suffering, discomfort, emotional injuries and distress, and mental anguish; and his Estate is entitled to recover damages therefor as provided in Hawaii Revised Statutes (hereinafter "H.R.S.") § 663-7.

77.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Antonio suffered permanent loss of enjoyment of life and the inability to pursue normal activities of life; and his Estate is entitled to recover damages therefor as provided in H.R.S. § 663-7.

78.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have incurred medical and miscellaneous expenses in amounts not presently ascertainable, and decedent's Estate has been compelled to and did make and incur various costs and expenses for medical, funeral and burial expenses, in such amounts as shall be shown at the time of trial; and Plaintiffs and Antonio's Estate are thereby entitled to recover damages as provided in H.R.S. § 663-3.

79.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Antonio's Estate has incurred loss of future excess earnings; and Antonio's Estate is thereby entitled to recover damages as provided in H.R.S. § 663-8.

80.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiff Rachel K.M. Marrero, individually, as the surviving spouse of Antonio, has suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, marital care and attention, advice, counsel, and other benefits of her husband for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

81.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiff Z.T.S.M., individually, as the surviving child of Antonio, has suffered, and will continue to suffer in the future, pecuniary injury, loss

of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, parental care and attention, advice, counsel, and other benefits of his father for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

82.   As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiff A.A.J.M., individually, as the surviving child of Antonio has suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, parental care and attention, advice, counsel, and other benefits of his father for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

83.   As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as

aforesaid, Plaintiff A.J.F., individually, as the surviving dependent of Antonio has suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, parental care and attention, advice, counsel, and other benefits of Antonio for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

84.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiff Antonio V. Marrero, individually, as the surviving father of Antonio has suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, filial care and attention, advice, counsel, and other benefits of his child for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

85.    As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiff Tauamatu Marrero, individually, as the surviving mother of Antonio has suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, filial care and attention, advice, counsel, and other benefits of her child for which said Plaintiff is entitled to recover damages as provided in H.R.S. § 663-3; and in addition, has suffered and continues to suffer serious mental anguish and emotional distress and has been permanently injured, and said Plaintiff is also entitled to recover damages therefor.

## COUNT II

86.    The allegations contained in paragraphs 1 through 85 are realleged and incorporated herein by reference.

87.    At all times relevant herein, Dr. Robert Bonham and the employees, agents, servants and representatives of WCCHC who examined, diagnosed, cared for and treated Antonio were acting within the course and scope of their employment, agency and service with WCCHC and therefore with Defendant.

88.   Defendant is liable to Plaintiffs for the tortious conduct of the above-mentioned employees, agents, servants and representatives as set forth in this Complaint under the doctrine of <u>respondeat</u> <u>superior</u> and/or agency principles.

## COUNT III

89.   The allegations contained in paragraphs 1 through 88 are realleged and incorporated herein by reference.

90.   Defendants and their employees, agents, servants and representatives failed to inform Plaintiffs of the information a reasonable patient needs from health care providers to allow the patient and/or the patient's guardian or legal surrogate to make an informed decision regarding proposed treatment.

91.   As a direct, legal and/or proximate result of Defendants' failure to provide Plaintiffs said information Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

## COUNT IV

92.   The allegations contained in paragraphs 1 through 91 are realleged and incorporated herein by reference.

93.   At all times relevant herein, WCCHC and its employees, agents, servants and representatives did hold themselves and their health

care provider employees, agents, servants and representatives out to members of the general public and to Plaintiffs as possessing that degree of care and skill ordinarily possessed and exercised by like health care providers, employees, agents, servants and representatives.

94.     At all times relevant herein, WCCHC impliedly and/or expressly warranted to Plaintiffs that it and its employees, servants, agents and representatives would provide competent care and appropriate treatments and/or services.

95.     WCCHC breached its warranties to Plaintiffs.

96.     As a direct and legal and/or proximate result of WCCHC's breaches of warranties, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.     For general and special damages in amounts that will be proven at trial; and Plaintiffs further state that the amount of their damages as asserted herein falls within the jurisdictional requirements of this Court;

b.     Interest as allowed by law;

c.     Plaintiffs' costs of suit and attorneys' fees; and

d.      Such other and further relief as this Court deems just and

proper.

DATED:  Honolulu, Hawaii, February 6, 2015.


                                          __/s/ L. Richard Fried, Jr._____
                                          L. RICHARD FRIED, JR.
                                          JOHN D. THOMAS, JR.
                                          GEOFFREY K. S. KOMEYA
                                          Attorneys for Plaintiffs